UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LITECUBES, L.L.C., et al.,                    )
                                              )
        Plaintiffs,                           )
                                              )
    vs.                                       )        Case No.   4:04CV00485 ERW
                                              )
NORTHERN LIGHT PRODUCTS, INC.,                )
                                              )
        Defendant.                            )

## MEMORANDUM AND ORDER

This matter comes before the Court upon Plaintiffs' Motion for Summary Judgment of Infringement of the '198 Patent [doc. #59] and Defendant's Motion for Summary Judgment of Noninfringement of the '198 Patent [doc. #32].

## I.    BACKGROUND FACTS[1] AND PROCEDURAL HISTORY

Plaintiff Carl Vanderschuit is the owner of United States Patent No. 6,416,198 ("the '198 patent"). Plaintiff Litecubes, L.L.C. ("Litecubes") owns a license to manufacture and sell the patented device. Claim 1 of the '198 patent claims "[a]n illuminatable beverage accessory device" comprising, *inter alia*, "a filler . . . adapted to retain heat when said device is heated." Claim 16 relates to the same type of beverage device, except the filler is "adapted to retain cold when said device is cooled." In November 2003, Litecubes notified Northern Light Products, Inc., doing business as www.GlowProducts.com ("GlowProducts"), demanding that it cease selling its LED ice cube, claiming that it infringed its copyright and other intellectual property rights. GlowProducts ceased offering that specific LED ice cube on its website. However, later

_____

[1]Defendant does not specifically controvert any of the facts in Plaintiffs' Statement of Uncontroverted Facts. Pursuant to Local Rule 4.01(E), the Court will deem the facts to be admitted by Defendant.

1

that year, Defendant began selling the "8 Mode Multi Cube" and the "3 Setting Flashing Lighted Ice Cube." The website touted that "[n]ot only will it amuse your guests, but it can keep their drink warm or cool with its internal gel" and "[t]his light up ice cube also comes with internal gel that can be heated or frozen to keep your drink warm or cool."[2] The fundraising page of GlowProducts' website indicated that for multiple fundraising audiences, "[t]he lighted ice cubes are a best seller. People love to buy them not only because they keep their drinks cool but because they have 8 different color settings to play with."[3] Similarly, when certain search terms were entered into the Yahoo! and Google search engines, a description of GlowProducts' ice cube appeared to the web-user, describing the accused device as having "an internal gel that you can freeze."

Again, Litecubes contacted Defendant and insisted that Defendant cease selling the products. Plaintiffs admit the new cubes avoided infringing Plaintiffs' copyright, but they claim that these cubes infringe on their '198 patent claims. Plaintiffs filed suit against Defendant on April 23, 2004, alleging (1) Patent Infringement, (2) Copyright Infringement, (3) Unfair Competition, and (4) Trademark Infringement. Defendant has counterclaimed seeking (1) a declaratory judgment of invalidity and (2) a declaratory judgment of non-infringement.

Defendant filed a motion for partial summary judgment, requesting the Court find its accused ice cube multicolor ("ICM") lighted ice cubes do not infringe on any claim of Plaintiffs' '198 patent. Plaintiffs filed a cross-motion for summary judgment seeking a finding of infringement. The only disputes by the parties are in reference to the phrase in claim limitation (1)(f) that states "filler within said cavity, said filler adapted to retain heat when said device is heated" and claim limitation (16)(f) that states "filler within said cavity, said filler adapted to

---

[2]The Court notes that the exhibit filed indicates that these statements were on the website at least as late as April 20, 2004.

[3]The Court notes that the exhibit filed indicates that these statements were on the website at least as late as August 24, 2004.

retain cold when said device is cooled." Although the parties agree that GlowProducts' accused device meets all the other limitations of claim 1 and claim 16,[4] Defendant argues that even though the accused device contains a filler, the filler is not adapted to retain heat (cold) when heated (cooled).

## II.    SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Crumley v. City of St. Paul, 324 F.3d 1003, 1006 (8th Cir. 2003). The United States Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 1).

"'By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Hufsmith v. Weaver, 817 F.2d 455, 460 n.7 (8th Cir. 1987) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis added by Supreme Court)). Material facts are "those 'that might affect the outcome of the suit under governing law.'" Id. (quoting Anderson, 477 U.S. at 247-48).

---

[4]It is undisputed that GlowProducts' ICM ice cube has (a) a light source, (b) a power source switchably connected to the light source, (c) a cartridge with a light source chamber to contain the light source, a power source chamber below the light source chamber and two wire lead channels on the cartridge underside and is in communication with the light source chamber, (d) a lid under the cartridge, the lid having a lid chamber mating with the power source chamber to contain the power source and a power switching means for powering the light source into and from an on-light mode into and from an off-light mode, (e) a housing covering the cartridge and lid such that a cavity is defined therein and a water-tight integrity is maintained within the housing, and (f) a filler within the cavity.

Summary judgment will be denied due to a material issue of genuine fact if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Crumley, 324 F.3d at 1006. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, quoted in St. Jude Med., Inc. v. Lifecare Intern., Inc., 250 F.3d 587, 595 (8th Cir. 2001).

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. Crumley, 324 F.3d at 1006 (citing Lynn v. Deaconess Med. Ctr.-W. Campus, 160 F.3d 484, 487 (8th Cir. 1998)). The burden then shifts to the non-moving party who must set forth specific evidence showing that there is a genuine dispute as to material issues. Anderson, 477 U.S. at 249. To meet its burden, the non-moving party may not rest on the pleadings alone and must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." Hilgraeve, Inc. v. Symantec Corp., 271 F.Supp.2d 964, 974 (E.D. Mich. 2003).

In analyzing summary judgment motions, the court must view the evidence in the light most favorable to the non-moving party. Crumley, 324 F.3d at 1008. The non-moving party is given the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 586. The court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." Kampouris v. St. Louis Symphony Soc., 210 F.3d 845, 847 (8th Cir. 2000). The court instead "perform[s] only a

gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." Id.

## III. DISCUSSION

Plaintiffs allege that Defendant's ICM ice cube infringes the '198 patent. In order to determine whether an accused device infringes a patent, a court must complete a two-step analysis. "First, the court must construe the claims. Second, the court must compare the accused product or process to the properly construed claims." Warner-Lambert Co. v. Teva Pharmaceuticals USA, Inc., 2005 WL 1903759 *10 (Fed. Cir. Aug. 11, 2005) (internal citations omitted). The Court completed the first step in its March 7, 2005 Order construing the phrase "adapted to retain heat (cold) when said device is heated (cooled)."[5] Unlike claim construction, the comparison of the accused device to the construed claims is a question of fact. North Am. Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335 (Fed. Cir. 2005). The "comparison of the claim to the accused device or method, requires a determination that every claim limitation or its equivalent is found in the accused device." Lockformer Co. v. PPG Industries, Inc., 2005 WL 1529928 (Fed. Cir. 2005). Ultimately, "[t]he proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-movant,. . .draw[ing] all justifiable inferences in favor of the non-movant. Boss Control, Inc. v. Bombardier Inc., 410 F.3d 1372, 1376 (Fed. Cir. 2005).

Defendant argues that the polyethylene-based filler in the ICM ice cubes has no meaningful ability to retain thermal energy. Dr. Ann Mescher, the expert hired by Defendant, explained that materials adapted to retain heat (cold) "will undergo a phase change throughout the

---

[5]On March 7, 2005, this Court concluded that "filler within said cavity, said filler adapted to retain cold when said device is cooled." means: filler within said cavity, said filler made suitable to or fit for the specific use of retaining cold when said device is cooled. The phrase "filler within said cavity, said filler adapted to retain heat when said device is heated." means: filler within said cavity, said filler made suitable to or fit for the specific use of retaining heat when said device is heated.

temperature range of interest for cooling or heating beverages." Using this theory, Dr. Mescher concluded that the plastic-like filler in GlowProducts' ICM ice cube is "an insulator" and is therefore not adapted to retain heat (cold). Specifically, she found that the ICM ice cubes warm at the same rate as water, and thus, do not slow the rate at which a cold beverage reaches room temperature. Plaintiffs argue that the conclusion to be drawn from this test is that GlowProducts' filler retains heat (cold) at least as well as water, and Dr. Mescher herself said that "water is one of the best known materials for 'retaining cold' or 'retaining heat[.]'"

Plaintiffs argue that the ICM ice cubes' filler is suitable to or fit for the specific use of retaining heat (cold) when heated (cooled). Plaintiffs counter Dr. Mescher's conclusions with the report of Dr. Kevin Trankler. Dr. Trankler concluded that the ICM cube's filler is fit to retain heat and cold, because in each experiment, when the filler was cooled it became cold and stayed cold, only gradually rising to room temperature. Plaintiffs argues that all of the tests that have been performed by all of the experts retained in this case support Dr. Trankler's conclusion.

Plaintiffs claim that Dr. Mescher's tests support Dr. Trankler's conclusions. However, Plaintiffs asseverate that Dr. Mescher's conclusion that the accused filler is not adapted to retain heat (cold) is unreliable and inconclusive because (1) she does not explain why simply measuring the temperature of the filler does not establish the compound's fitness for retaining heat (cold); (2) her testing demonstrates, at most, that the filler warms at the same rate as water; and (3) she did not determine the correct chemical identity, weight or specific heat of the filler before making her conclusions.

On the other hand, Defendant argues that Dr. Trankler's conclusion, that the filler cools when exposed to colder temperatures and will warm over time to the same temperature as the surrounding environment, could describe any material, even those not considered "made suitable for or fit for the specific use of retaining heat (cold)." Indeed, Defendant notes that Dr. Trankler does not even identify a class or type of materials that would be suitable for that use. The parties'

arguments regarding (1) the reliability of the experts' tests, (2) the usefulness and sagaciousness of the experts' analysis, and (3) whether GlowProducts' filler retains heat (cold) for a long enough period of time to be considered "suitable to or fit for the specific use" of retaining thermal energy are classic issues of fact to be decided by a jury. For this reason, summary judgment is inappropriate.

Defendant also argues that the prosecution history indicates Mr. Vanderschuit narrowed his claims based on a rejection by the Examiner for indefiniteness to only those beverage accessories that contain a filler that are "adapted to" retain heat or cold. The rejected claim said the filler must "bear[] heat (cold) retaining qualities," but the claim was rejected because the limitation did not adequately "provide a standard for ascertaining the requisite degree" of thermal retention ability. In response, Mr. Vanderschuit substituted the disputed language of "adapted to retain heat (cold) when said device is heated (cooled)" for the rejected limitation. GlowProducts asserts that while the class of materials that are adapted to retain heat or cold can be much broader than those materials listed in the specification, there must be some commonality between the function of the materials listed in the specification and the accused filler. Plaintiffs contend that Defendant's argument is essentially a repackaged claim construction argument. The Court disagrees with Plaintiffs contention, believing that Defendant's comparisons of its filler to other materials suited to retain heat (cold) is helpful in determining whether the ICM cube infringes the '198 patent. However, the comparison is quite simply a factual issue that must be reserved for a jury. Whether the filler in the accused device is adapted to retain heat (cold) is a question of degree. Indeed, whether the filler meets the limitation in the '198 patent presents a question for the jury.

Plaintiffs contend that the advertisements on GlowProducts' website and the Google and Yahoo! search engines are "plain admissions of infringement" and support the intent necessary for a finding of willful infringement. Plaintiffs argue that Defendant only removed the advertising

claims because of "litigation-induced expediency," and admissions of this type are persuasive evidence of infringement. Defendant claims that the statements were made in error, and thus, are irrelevant. Defendant admits that it added the statements to its website without verifying their accuracy, and when it determined that the statements were not "true," it immediately removed the statements.[6] Therefore, because the information contained in the advertisements was inaccurate and eventually removed, the statements are irrelevant to show the ability of the filler to retain heat (cold) and unfairly prejudice Defendant.

This Court finds that the admissions are persuasive, relevant evidence of infringement, but the evidence does not foreclose the possibility that a reasonable jury could find that there was no infringement. It is not this Court's duty to delve into credibility questions at the summary judgment stage. Instead, the motion for summary judgment should be denied so that a jury can determine these issues of fact.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment of Infringement of the '198 Patent [doc. #59] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment of Noninfringement of the '198 Patent [doc. #32] is **DENIED**.

Dated this 2nd day of September, 2005.

_E. Richard Webber_
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

---

[6]Defendant claims that it intended to remove all of the claims of the ability of the ICM cube to keep cold drinks cool when it noticed the alleged inaccuracy. Defendant posits that the statements that were not removed in April/May 2004 only remained on the website due to an oversight on the part of Derek Pettigrew, the individual removing the items from the webpage.

8