UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LITECUBES, L.L.C., et al.,                    )
                                              )
            Plaintiffs,                       )
                                              )
      vs.                                     )        Case No.   4:04CV00485 ERW
                                              )
NORTHERN LIGHT PRODUCTS, INC.,                )
                                              )
            Defendant.                        )

## MEMORANDUM AND ORDER

This matter comes before the Court upon Defendant's Motion to Dismiss for Lack of

Subject Matter Jurisdiction [doc. #195]; Defendant's Motion for Judgment as a Matter of Law

Regarding Copyright Infringement, or Alternatively, for Remittitur [doc. #197]; Plaintiffs' Motion

for Attorney Fees, Costs and Interest [doc. #199]; Plaintiffs' Supplemental Motion for Bill of

Costs [doc. #201]; Defendant's Motion to Stay Briefing for all Motions for Attorneys' Fees,

Costs and Interest [doc. #202]; Plaintiffs' Motion for Permanent Injunction [doc. #205];

Defendant's Motion for Judgment as a Matter of Law Regarding Patent Infringement, or

Alternatively, for a New Trial [doc. #213]; Defendant's Motion for Bill of Costs [doc. #216]; and

Defendant's Cross-Motion for Attorneys' Fees and Costs [doc. #218].

On April, 23, 2004, Plaintiffs filed suit alleging various intellectual property violations by

Defendant.  On September 24, 2004, Plaintiffs filed their first Amended Complaint alleging patent

infringement, copyright infringement, unfair competition, and trademark infringement.  A five-day

jury trial was held in this case from October 3, 2005 through October 7, 2005.  All claims were

submitted to the jury for determination, except for the unfair competition claim.  On October 7,

2005, a verdict was entered.  The jury found that: (1) the Diefenbach reference did not anticipate

the '198 Patent; (2) neither the Diefenbach reference nor the Kolb patent rendered the '198 Patent

1

obvious; (3) Defendant's EXA cube and ICM cube willfully infringed Plaintiffs' '198 Patent, but

that Plaintiffs were not entitled to lost profits or a reasonable royalty; (4) Defendant willfully

infringed Plaintiffs' copyright, and Plaintiffs were entitled to $30,000 in statutory damages and

$120,000 in exemplary damages; and (5) Defendant did not infringe Plaintiffs' valid trademark.

The parties filed several post-trial motions, and the Court will address each below.


### MOTIONS FOR JUDGMENT AS A MATTER OF LAW

"In a motion for [a judgment as a matter of law], the question is a legal one, whether

there is sufficient evidence to support a jury verdict." *Summit v. S-B Power Tool*, 121 F.3d 416,

420 (8th Cir. 1997). Rule 50 of the Federal Rules of Civil Procedure ("Rule") provides that

> If, for any reason, the court does not grant a motion for judgment as a matter of
> law made at the close of all the evidence, the court is considered to have
> submitted the action to the jury subject to the court's later deciding the legal
> questions raised by the motion. The movant may renew its request for judgment
> as a matter of law by filing a motion no later than 10 days after entry of
> judgment

Fed. R. Civ. Pro. 50(b). In an intellectual property case, the district court applies the standard for

a "judgment as a matter of law ("JMOL") under the law of the regional circuit where the appeal

from the district court normally would lie." *MicroStrategy Inc. v. Business Objects, S.A.*, 429

F.3d 1344, 1348 (Fed. Cir. 2005) (internal quotations omitted); *see also nCube Corp. v.

Seachange Intern., Inc.*, 436 F.3d 1317, 1319 (Fed. Cir. 2006). A district court sitting in the

Eighth Circuit will only grant a motion for JMOL

> if there is insufficient evidence to support a jury verdict in the plaintiff's favor.
> When reviewing a motion for judgment as a matter of law, this Court must: (1)
> resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all
> facts supporting the nonmovant which the evidence tended to prove, (3) give
> the nonmovant the benefit of all reasonable inferences, and (4) deny the motion
> if the evidence so viewed would allow reasonable jurors to differ as to the
> conclusions that could be drawn.

*Winskowski v. City of Stephen*, 442 F.3d 1107, 1109 (8th Cir. 2006) (quoting *City Nat'l Bank of Fort Smith v. Unique Structures, Inc.,*929 F.2d 1308, 1312 (8th Cir.1991)); *see also Melford Olsen Honey, Inc. v. Adee*, 452 F.3d 956, 963 (8th Cir. 2006) (discussing standard); *Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1123 (8th Cir. 2006) (same). "Thus, judgment as a matter of law is appropriate when the record contains no proof beyond speculation to support a verdict." *Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 417 (8th Cir. 2005).

**Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [doc. #195]**

Defendant claims that the Court has no subject matter jurisdiction over Plaintiffs' claims because Plaintiffs failed to introduce evidence that (1) Defendants directly, contributed to, or induced the infringement of the '198 patent in the United States; (2) Defendants distributed copyrighted works in the United States; and (3) Defendant's activities implicate American interests under the Lanham Act.

This Court finds that evidence of direct infringement under 35 U.S.C. § 271 is sufficient to establish subject matter jurisdiction in this Court.[1] Defendant clearly imported the accused products into the United States; thus, this Court has subject matter jurisdiction over the claims in Plaintiffs' Amended Complaint.[2] According to 35 U.S.C. § 271, infringement of a patent occurs when, "[e]xcept as otherwise provided in this title, whoever without authority makes, uses, offers

---

[1]It is not necessary for the Court to address Defendant's other arguments since the Court finds that this Court has subject matter jurisdiction because Defendant is an "importer" under 35 U.S.C. § 271(a).

[2]Defendant argues that Plaintiffs' theory that Defendant was an "importer" under 35 U.S.C. § 271 was an "afterthought." The Court disagrees. While the "importer" theory is not specifically pled in Plaintiffs' Amended Complaint, the issue was raised at trial, and thus, shall be treated as if it was raised in the Pleadings. *See* Fed. R. Civ. Pro. 15(b); *Triple Five of Minnesota, Inc. v. Simon*, 404 F.3d 1088, 1095 (8th Cir. 2005) (motion to amend the pleadings to conform to the evidence can be made at any time, even after judgment). Plaintiffs are granted leave to file a Second Amended Complaint so that Count I conforms to the evidence presented at trial. Furthermore, the amendment will relate back to the date of the original pleading. *See* Fed. R. Civ. Pro. 15(c).

to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." Defendant primarily relies on *Cybiotronics, LTD. v. Golden Source Electronics, LTD.*, 130 F. Supp.2d 1152 (D.C. Cal. 2001) to argue that Defendant is not an "importer" of the accused product. In *Cybiotronics*, the plaintiff, a Hong Kong corporation, owned the rights under patents relating to telephone and caller identification technology. The defendant, also a Hong Kong corporation, was approached by a New York Corporation ("NAFT") about starting to produce phones with caller identification technology. All of the negotiations took place in Hong Kong. Engineers designed the phone in Korea, and the phones were manufactured at facilities located in China. Once the products passed inspection in China, they were shipped NAFT in Hong Kong. NAFT would then sell the phones to United States' company, BellSouth. Defendant argued that it could not be liable for direct infringement because all of its activities relating to the accused products took place in Hong Kong, China, or Korea. The Federal Circuit agreed, finding, *inter alia*, that defendant was not an "importer" because "[a]ny and all activity that might be considered 'import[ing] into the United States' was conducted by either NAFT or by BellSouth, and [defendant] itself was not the 'importer' of the accused products." *Id*. at 1175. The court relied on another case, *Pfizer, Inc. v. Aceto Corp.*, 853 F. Supp 104 (S.D.N.Y 1994), which interpreted the term "imports" as it appeared in another section of 35 U.S.C. § 271. In *Pfizer*, Anhui, a Chinese manufacturer sold a flavor enhancer to another Chinese corporation, which in turn, sold the product to American companies. The court held that Anhui was not an importer of the product. Relying on the *Pfizer* court's analysis, the *Cybiotronics* court held that "NAFT remained at all times the legal 'importer' of these goods 'into the United States,' and the statute does not reach [defendant's] behavior in this case." *Id*. at 1176.

The Court finds that the instant case is easily distinguishable. In both *Pfizer* and *Cybiotronics*, the defendant was not an "importer" because, in each case, an intermediary

company was acting as the importer. *See also MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377 (Fed. Cir. 2005) (no direct infringement where defendant, SUMCO, manufactured accused product in its facilities in Japan, and then sold the products to a party in Japan, Samsung Japan, who then employed a third-party packaging company to package and send the products to the United States). In *Pfizer*, the Chinese corporation that purchased the flavor enhancer from Anhui was the importer.[3] In *Cybiotronics*, the court found that NAFT was the legal importer of the goods. Here, Defendant took orders for the accused products over the telephone at the number published on its website. Once Defendant received an order from a customer in the United States, the Defendant shipped the product at the direction and expense of the purchaser. Bob Bryant, the President of Northern Light Products, testified that the large majority of the sales in U.S. dollars were sales to customers in the United States. Thus, unlike *Cybiotronics* and *Pfizer*, there was no intermediary; here, Defendant was the importer.[4] Therefore, the Court has subject matter jurisdiction.

### Defendant's Motion for Judgment as a Matter of Law Regarding Copyright Infringement, or Alternatively, for Remittitur [doc. #197]

Defendant argues that the jury's verdict of willful copyright infringement with respect to the EXA cubes is not supported by substantial evidence, and on this basis, Defendant is entitled to

---

[3]The American companies purchasing the product may also have been the importer if title to the product was transferred before the product left China. The court does not address this issue, but indicates that the American defendant may be liable if plaintiff is able to establish infringement.

[4]There was evidence during the trial that an Ebay seller located in Canada, known as "kick_chick" was selling Defendant's accused products to customers in the United States. This situation is much closer to the facts in *Cybiotronics* and *Pfizer*. Because "kick_chick" is an intermediary that receives title to the accused products before they reach the United States, Defendant would not be considered an "importer" of the lighted ice cubes sold by "kick_chick." Notably, Plaintiffs did not seek relief for the accused products sold by "kick_chick." Plaintiffs sought relief only for those products directly shipped by Defendant.

judgment as a matter of law. Alternatively, Defendant asks that the Court reduce the jury's damage award if the Court holds that Defendant is not entitled to judgment as a matter of law.

The court makes a determination of willfulness based upon the totality of the circumstances. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir. 2004). "In respect [to] willfulness, there cannot be hard and fast *per se* rules. The district court, considering the evidence before it and the testimony and demeanor of the witnesses, must in each case determine whether an infringer has discharged its affirmative duty of exercising due care." *Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1110 (Fed. Cir. 1986). "Actual notice of another's patent rights triggers an affirmative duty of due care to avoid infringement." *nCube Corp. v. Seachange Intern., Inc.*, 436 F.3d 1317, 1324 (Fed. Cir. 2006). Indeed, the question of willfulness "hinges on when the defendants had actual knowledge of plaintiff's patent rights, and their actions after that time." *Id*. If a defendant solicits legal advice, his argument against willfulness is strengthened; however, failure to seek out legal advice does not give rise to an inference of willfulness. *Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1378 (Fed. Cir. 2005) (citing Knorr-Bremse, 383 F.3d at 1345-46).

This Court holds that Plaintiffs presented sufficient evidence so that a reasonable factfinder could find that Defendant willfully infringed Plaintiffs' copyright. Defendant claims that the only evidence supporting willful infringement of the copyright was the evidence of the additional sale of the EXA cubes after Defendant received a cease and desist email on November 12, 2003. In Plaintiffs' response to the Defendant's motion, Plaintiffs highlighted several pieces of evidence presented at trial the supported the jury's verdict including:

> (a) the striking similarity in the outside shape of the EXA cube to the Litecube copyright (*i.e.* virtually identical);

6

(b) documentation reflecting Glowproducts' knowledge of Litecubes' website containing notices of its intellectual property *before* it ever sold the EXA cube to customers in the United States (P. Ex. 257);

(c) an email admission of Bryant to his supplier indicating that it was "dangerous" for Glowproducts to sell the EXA cubes after receiving a cease and desist notification from Litecubes, but requesting that additional cubes be shipped for future sale nonetheless (P. Ex. 263);

(d) Glowproducts' strategy to delay shipment of the EXA cubes in an intentional course of conduct to hide its infringing conduct (Kensit testimony);

(e) continued sales of the EXA cubes to customers in the United States despite notification and despite clear recognition of infringement (P. Ex. 270);

(f) preparation of intentionally misleading financial documents that deliberately sought to disguise the sales of EXA cubes after Glowproducts received further notice of the copyright in November, 2003 (P. Ex. 270);

(g) the inconsistent testimony of GlowProducts' owner and president, Bob Bryant, regarding when and why GlowProducts stopped selling the EXA cubes; and

(h) the lack of any plausible defense to the copyright infringement.

Defendant argues that the inferences advanced by Plaintiffs are "speculative." The Court disagrees. While none of these pieces of evidence is conclusive evidence of willful infringement on its own, the Court finds that a jury, viewing all of this evidence together and drawing reasonable inferences from such evidence, could have reasonably believed that Defendant willfully infringed on Plaintiffs' copyright.

Defendant complains that the EXA cubes only constituted 4.4% of the accused products in this case. This fact is irrelevant to the issue of whether the EXA infringed Plaintiffs' copyright, and Defendant has provided no authority showing otherwise.

Next, Defendant argues that it made good faith efforts to minimize copyright injury to Plaintiffs. Based on the verdict, it is clear that the jury made credibility determinations of the witnesses and did not believe that Defendant attempted to minimize infringement. The Court may not review the jury's credibility determinations once the Court has found that sufficient evidence exists to support the jury's verdict.

Defendant also claims that it was unfair that Plaintiffs argued that trial exhibit 270, listing the number of EXA cube sales, was misleading. Defendant argues that both parties simply misread the exhibit prior to trial. Defendant further contends that Plaintiffs should be estopped from arguing willful copyright infringement since Plaintiffs entered into a stipulation prior to trial regarding the number of EXA sold. The Court is not persuaded. The pre-trial stipulation was based on inaccurate information, and Plaintiffs only learned of this inaccuracy during trial. Plaintiffs were properly permitted to introduce evidence, and draw inferences therefrom, showing that exhibit 270 showed more sales of EXA cubes than was apparent upon the parties' prior interpretations of the exhibit.

Finally, Defendant argues that Plaintiffs' characterization of the evidence supporting copyright infringement is speculative. (a)[5] Defendant argues that it generally requested "battery operated ice cubes" and did not specify the shape of the cube it wanted to purchase. While the similarity in shape between the two cubes may not go to show willfulness, the evidence does provide evidence that the copyright was infringed. (b) Defendants argue that they did not know of Plaintiffs' copyright prior to the cease and desist email sent on November 12, 2003. One of Defendant's employees sent an email referencing the Litecubes' website on March 18, 2002. Defendant claims that the only exhibit in evidence showing Litecubes' website is DX 225, and the exhibit has no general intellectual property notice and no reference to Plaintiffs' copyright.[6] However, the Court notes that Carl VanderSchuit testified during the trial that Plaintiffs' website included notifications of the intellectual property rights owned by Plaintiffs. When asked "[w]hat measures did you take to notify the public about your patent and copyrights?," he replied that

---

[5]The lettering scheme corresponds to the letters of Plaintiffs' facts quoted *supra*.

[6]Upon the Court's independent review of the exhibit, the Court only saw that the name "Litecubes" was protected by a trademark. However, there was also testimonial evidence introduced about the contents of the website by Plaintiff Carl VanderSchuit

"[w]e put them on just about everything. We had them on all our emails at the company, actually, all the invoicing. I believe it's on the website. It's also on the bottom of the cube." The jury could have inferred that Defendant was aware of the copyright based on this testimony. (c,d) Next, Defendant posits that the jury could not have drawn an inference supporting copyright infringement from the email in which Defendant's President, Bob Bryant, noted that it would be "dangerous" to sell the EXA cubes since Defendant had received the cease and desist email. The Court disagrees. The context of Mr. Bryant's statement is damning. He stated that "I will agree to buy the remaining cubes from our order. Please tell me how many are left and how much is owing. It is very dangerous for my company to sell this ice cube at this time, so I request you do not ship them before January 31, 2004." The language in Mr. Bryant's email could have been interpreted by the jury to mean that Defendant knew of the risk of violating Plaintiffs' copyright, but still agreed to purchase the remaining cubes that the company had ordered after pushing back the date of delivery. The evidence showed that Defendant made attempts to appear as if the company no longer sold the EXA cubes after Plaintiffs' November 12, 2003 cease and desist email.[7] Indeed, one of Defendant's employees confirmed his deposition testimony at trial indicating that

> …Bob [Bryant] thought that Litecube was -- I don't know, for lack of a better word, watching our company very closely at the time, and I think he felt that they may have put some sort of stop-shipping request or didn't want -- Bob didn't want to have the stock in the warehouse because he felt that -- how am I going to put this? -- that Litecube might place a couple of orders with us under assumed names to see if we were still selling them or somehow find out that we were still selling these things and proceed from there. So Bob didn't want to have these things in the warehouse just in case Litecube was going to do something like that. . .

---

[7]Both Carl VanderShuit and Terry Hickey testified that they believed that Defendant stopped selling the EXA cubes when the product was removed from the website.

The jury could have inferred that Mr. Bryant moved the shipment date to January 31, 2004 because he believed it was "dangerous," specifically "at this time," and Defendant hoped that Plaintiffs would no longer be watching the company's website a couple of months later. This effort of concealment supports a finding of willfulness. (e) It is undisputed that Defendant sold 3,618 more cubes after receiving the cease and desist email. Defendant argues that it did not conceal sales after receiving the cease and desist letter, since the response specifically indicated that it would continue to sell the product until the company was able to "determine a position regarding infringement." There was evidence presented that the product was removed from the website. There was also evidence that Defendant did buy the remaining EXA cubes that had been ordered, but the date was pushed back. Finally, there was evidence offered that the financial documents were misleading regarding the sales of the EXA cubes following the cease and desist letter; indeed, it was only during the trial that Plaintiffs learned of the additional sales of EXA cubes. Regardless, "openly" infringing sales do not foreclose a finding that the infringement was willful. (f) Defendant argues that the financial documents detailing the sales of the EXA and ICM cubes are not misleading. Plaintiffs presented evidence that the description for the sales of EXA cubes in Defendant's bookkeeping system changed as of November 5, 2003, right around the time of the November 12, 2003 cease and desist email. Furthermore, it was the mid-portion of the description that was missing in the new entries, and it is unclear why the computer program would remove the mid-portion of the description if it was too long, instead of truncating one of the ends. Drawing all inferences in favor of Plaintiffs, the jury could have reasonably found the documents to be misleading or altered. (g) Defendant claims that Mr. Bryant's testimony on the stand during trial only changed because he had relied on the parties' stipulation as to the number EXA cubes sold after Defendant received the cease and desist letter. The Court is not persuaded. Mr. Bryant was the President of Northern Light Products, and it was reasonable for the jury to disbelieve that he did not know that his company continued to sell the infringing product after receiving the email

from Plaintiffs. (h) The Court finds that Plaintiffs' claim that Defendant lacked any plausible defense to the copyright infringement is basically a summarization of the preceding facts discussed by the Court in (a) - (g).

Drawing all reasonable inferences in favor of Plaintiffs, the jury could have inferred, based on the totality of the circumstances, that Defendant knowingly sold infringing products and deliberately concealed the sales. Thus, the Court finds that there was sufficient evidence to support a verdict that Defendant had willfully infringed Plaintiffs' copyright.

Defendant argues alternatively that the jury's award of damages was unreasonably high, and as such, the Court should reduce the award of damages. Relying on *Feltner v. Columbia Pictures Television, Inc.*, Defendant argues that Congress never intended for a jury to determine the appropriate amount of statutory damages. 523 U.S. 340, 345 (1998). Defendant's analysis of *Feltner* is incomplete. In that case, the Supreme Court analyzed whether there was a statutory right to a jury trial when a copyright owner elects to recover statutory damages, only to determine whether the court could avoid reaching the constitutional analysis under the Seventh Amendment. *Id*. at 1284. After the court found that no such statutory right existed, the court went on to analyze the constitutional issue, finding that the Seventh Amendment does grant the right a jury trial, including the right to have a jury determine the amount of statutory damages. *Id*. at 342. Thus, Plaintiffs clearly had the right to have a jury determine the amount of copyright damages.

The Court will not grant remittitur of the award. A court should only reduce a jury award if the "verdict is so grossly excessive the result is monstrous or shocking." *Andreas v. Volkswagen of America, Inc.*, 336 F.3d 789, 800 (8th Cir. 2003) (quoting *Callantine v. Staff Builders, Inc.*, 271 F.3d 1124, 1133-34 (8th Cir.2001)). Here, the jury properly awarded damages within the range designated by statute for willful copyright infringement. *See* 17 U.S.C. § 504(c). Based on the evidence presented at trial, the jury acted within its discretion in awarding $150,000 for copyright damages and exemplary damages for willful infringement.

**Defendant's Motion for Judgment as a Matter of Law Regarding Patent**

**Infringement, or Alternatively, for a New Trial [doc. #213]**

Defendant argues that the jury's verdict of willful patent infringement was not supported by sufficient evidence. It is undisputed that the '198 patent claims include limitations that within the patented device, the "filler within said cavity, said filler adapted to retain heat when said device is heated" and "filler within said cavity, said filler adapted to retain cold when said device is cooled." Defendant claims that the only evidence presented during the trial relating to the filler in the EXA cube was that the EXA cube's filler did not have the "ability to retain heat or cold" when compared to other materials. Defendant further argues that even if the EXA and ICM cubes did infringe the '198 patent, the infringement was not willful.

The Court finds that sufficient evidence was introduced during trial to support the jury's finding of willful infringement of the '198 patent.

*Infringement*

There was evidence presented during the trial that the EXA cube met all the limitations of claim 31 of the Litecubes' patent. Defendant admits that both the EXA and ICM cubes met every limitation of claims 1 and 16, except for the "adapted to retain heat/cold" limitation. Claim 31 did not have the "adapted to retain heat/cold" limitation, and the only additional limitation in claim 31 was that the device have a "power source to reciprocally translate therein from an open light-on mode to a closed light-off mode." Mr. VanderSchuit testified that before sending the cease and desist letter to Defendant, he believed that the EXA cube infringed Claims 1, 16, and 31 of the '198 patent. He explained that the EXA cube had a "tap on/tap off switch" as is described in Claim 31 as the "reciprocally translating power source." In the Reply to Plaintiffs' Response, Defendant does not dispute that the EXA cube met all the limitations of Claim 31 of the '198 patent.

Defendant does contend that Plaintiffs presented insufficient evidence to support a jury verdict that the ICM cube was "adapted to retain heat/cold." The Court disagrees. After reviewing the trial transcript, the Court finds that there is substantial evidence supporting Plaintiffs' allegation that the ICM cube retains heat/cold. Most persuasive is the evidence that Defendant's website included advertisements for the ICM cube, touting that the cube's ability to keep a drink cool. Plaintiffs introduced excerpts from Defendant's website, Glowproducts.com, as they appeared three days prior to Plaintiffs filing this lawsuit. The excerpts included statements such as:

- "The 8 Mode Multi-Cube is a great lighted ice cube for livening up your drinks. Not only will it amuse your guests, but it will keep their drink warm or cool with its internal gel."

- "The lighted ice cubes are our best seller. People love to buy them, not only because they keep their drinks cool but because they have eight different color settings to play with."

- "Our light-up cube, our light-up ice cube is a best seller. Keep these drinks cool while entertaining.. . .Keep their drinks cool while entertaining them.. . .Eight different color settings."

- "If you're wondering, 'Can I put these ice cubes in the freezer,' the answer is yes. Our battery-operated ice cubes adapt to any temperature."

The statements were removed right around the time that Plaintiffs filed the instant lawsuit. While Defendant argued during trial that the statements were on their website, but were wrong, it is likely that the jury did not find Defendant's argument to be credible, and instead believed Defendant's arguments to be litigation-induced.

There was also evidence presented that after Plaintiffs filed the lawsuit, Defendant's lawyer wrote on May 5, 2004 that "[w]e have to prove that we do not have heat retaining or cold retaining to defend ourselves." Then, in this same time frame, Defendant began attempting to "check with labs to determine whether or not labs had an opinion regarding whether your filler

retained heat or cold" and at least one of the labs gave Defendant "an answer [its] lawyer didn't want to hear," telling Defendant that "every material is capable of retaining heat or cold to either a greater or lesser degree." The jury also heard evidence from Plaintiffs' expert, Kevin Trankler, that he performed three different tests on the ICM cubes, and in his opinion, the cubes were "adapted to retain heat/cold." Mr. VanderSchuit also testified that he believed that the ICM cubes retain heat/cold.

Furthermore, the evidence showed that there are "practical issues" that restrict the type of filler that can be used. For example, while water does retain heat/cold better than the gel inside the ICM cube, water "has bacteria and can yellow over the course of time." Additionally, Plaintiffs exposed that "the latent heat number [was] incorrect" in Defendant's expert's calculation that 60 ICM cubes was the equivalent of one ice cube of frozen water. After correcting for the mistake, ratio was reduced to seven-to-one. However, after the mistake was exposed, Defendant's expert, Dr. Ann Mescher, indicated that the ratio would still be 60-to-1 if the volume of the gel being measured equaled the volume of the ice cube. The jury may have discounted Dr. Mescher's alternative basis for finding the 60-to-1 ratio, and believed that the ratio would be closer to the 7-to-1 ratio suggested by Plaintiffs.

### *Willfulness*

Defendant argues that Plaintiffs are estopped from arguing that Defendant sold EXA cubes after receiving the cease and desist email on November 12, 2003. Relying on *Sims v. Wyrick*, 743 F.2d 607 (8th Cir. 1984), Defendant claims that Plaintiffs should not be able to contradict its pretrial stipulation that no additional EXA cubes were sold after Defendant received the November 12 email. In *Sims*, the court enforced upon the parties a pretrial stipulation that "there was in effect in 1977 a policy flatly banning all written material referring to the Black Panther Party." *Id*. at 611. The court explained that "[h]ere, there is no claim of fraud or unfairness....Nor is this a case in which the stipulation is flatly contrary to all of the evidence on

the subject it covers." *Id*. at 610. This case is completely different. Here, the Plaintiffs have claimed that they entered into the stipulation because the financial document was misleading and possibly altered.[8] Furthermore, it is undisputed that the stipulation is based on incorrect information. Thus, Defendant's argument that Plaintiffs are barred by estoppel from arguing that sales of EXA cubes occurred after Defendant received the November 12, 2003 letter is not persuasive. Additional evidence of willfulness is discussed *supra* in the Court's analysis of copyright infringement.

A reasonable jury could have also found willful infringement of the '198 patent by the ICM cubes. Defendant had notice of Plaintiffs' intellectual property rights no later than November 2003. See Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH, 408 F.3d 1374, 1377 (Fed. Cir. 2005) (recognizing that "[a]ctual notice of another's patent rights triggers an affirmative duty of due care"). Indeed, Defendant's defense to infringement was that the ICM cubes are not "adapted to retain heat/cold," a contention that is belied by Defendant's own advertising on its website. Furthermore, Defendant only sought the advice of counsel as to whether the ICM cubes infringed after Plaintiffs had filed suit. Reasonable jurors could draw different conclusions about whether Defendant's infringement was willful. Therefore, this Court holds that JMOL is not proper.

### New Trial

A motion for a new trial is governed by the standard set forth by the Eighth Circuit. *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1182

---

[8]Defendant makes the argument that Plaintiffs knew prior to trial that the stipulation was inaccurate, but waited until trial to reveal the error in order to ambush Defendant. Defendant presents no credible evidence supporting their allegation. In Plaintiffs' Response in Opposition to Defendant's Motion for JMOL Regarding Patent Infringement [doc. #225], Plaintiffs claim that "[i]t came to light at trial that, after having been formally advised of the '198 patent in November, 2003, GlowProducts continued to sell the EXA cubes."

(Fed.Cir.2002) ("The denial of a motion for a new trial is a procedural issue not unique to patent law which this court reviews under the law of the appropriate regional circuit[.]"). "The grant of a motion for a new trial is inappropriate unless 'the verdict is against the weight of the evidence and [ ] allowing it to stand would result in a miscarriage of justice." *Lampkins v. Thompson*, 337 F.3d 1009, 1016 (8th Cir. 2003). The Court has considered all of the evidence presented at trial and finds that the jury's verdict was not against the weight of the evidence. Thus, Defendant's Motion for a New Trial will be denied.

### PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION [doc. #205]

The Patent Act gives federal courts the authority to grant permanent equitable relief to patent holders. 35 U.S.C. § 283 provides that "[t]he several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable. Congress gave federal courts similar authority relating to copyrights. According to 17 U.S.C. § 502, "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." In *eBay, Inc. v. MercExchange, L.L.C.*, reiterated that the traditional principles of equity apply when a court is deciding whether to award a permanent injunction against an infringing party. __ U.S. __, 126 S.Ct. 1837 (2006). Specifically, the plaintiff must show

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 1839.

In this case, Plaintiffs have demonstrated that they suffered an irreparable injury. Potential customers in the United States were buying infringing devices sold and imported by Defendant, instead of purchasing the products sold by Plaintiffs. Furthermore, damages are inadequate to compensate Plaintiff. If the Court fails to grant equitable relief, Defendants will be able to continue to sell and import its products in violation of Plaintiffs' intellectual property rights unless Plaintiffs file another lawsuit to enforce their rights. While Defendant claims that it has no intention of selling EXA cubes to consumers in the United States, the Court notes that Defendant admits that it still has in its warehouse inventory to be sold, and based upon Defendant's sales history, it is likely those products may find their way to the United States. Next, the Court finds that after balancing the hardships faced by both parties, Plaintiffs are entitled to equitable relief. Plaintiff VanderShuit went through the time and expense of developing the patented device and obtaining legal protections for his invention in the form of a patent, trademark and copyright. Defendant has no such protection and seeks to poach customers in the United States in violation of Plaintiffs' rights. The Court believes that an injunction is necessary in order to prevent Defendant from continuing to sell and import its infringing products in the future. Finally, the Court finds that the public interest would not be disserved by a permanent injunction. Thus, the Court will grant Plaintiffs equitable relief.

The parties disagree as to the scope of the injunction. The Court will enter an injunction with the following terms:

> GlowProducts and each of its agents, affiliates, successors, servants, and employees, and any and all other persons or entities acting under GlowProducts' authority, are hereby enjoined from (1) at any time on or before July 28, 2020, making, using, offering for sale or selling in the United States or importing into the United States products which infringe U.S. Patent No. 6,416,198 ("the '198 patent") or (2) infringing U.S. Copyright Registration No. VA 1-117-699 ("the '699 copyright") by reproduction, preparing a derivative work, distribution, display, or claim authorship of any work that is substantially similar to the work depicted in the '699 copyright.

## MOTIONS FOR FEES, COSTS, AND INTEREST

### Prevailing Party

As a preliminary matter, the Court will determine if either Plaintiff or Defendant can be considered a prevailing party in this matter. "In designating those parties eligible for an award of litigation costs, Congress employed the term 'prevailing party,' a legal term of art." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 603 (2001). In this case, both parties have filed motions for attorney fees and costs.

"What counts as prevailing for purposes of an award of costs is a question of law." *Leonard v. Southwestern Bell Corp. Disability Income Plan*, 408 F.3d 528, 533 (8th Cir. 2005). The Supreme Court has defined a "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Buckhannon Bd. and Care Home, Inc.*, 532 U.S. at 603; *see also Hillside Enterprises v. Carlisle Corp.*, 69 F.3d 1410, 1416 (8th Cir. 1995) (defendant won judgment against plaintiff on counterclaim but plaintiff won larger judgment so plaintiff "logically" was considered the "prevailing party"). As used here, a "judgment" is a "a court-ordered chang[e][in] the legal relationship between [the plaintiff] and the defendant" leading to a "material alteration of the legal relationship of the parties." *Id*. at 604 (alteration in original); *see also Republican Party of Minn. v. White*, 2006 WL 1687468, at *2 (8th Cir. June 20, 2006) (because Republican Party is now freely able to endorse candidates without risking an ethics violation, there was a material alteration in the relationship of the parties); *Forest Park II v. Hadley*, 408 F.3d 1052, 1060 (8th Cir. 2005) (winning declaratory judgment action did not change relationship between the parties because prior to the suit, the defendant had not taken any action against plaintiff).

Plaintiffs' Complaint alleged (1) patent infringement, (2) copyright infringement, (3) unfair competition, and (4) trademark infringement. The Court did not submit the claim of unfair competition to the jury, finding that insufficient evidence as a matter of law. All the other claims

were submitted to the jury. First, the jury rejected all of Defendant's affirmative defenses. On the patent infringement claim, the jury found that Defendant willfully infringed Plaintiffs' patent, but awarded no damages. The jury also found willful copyright infringement and awarded Plaintiffs $30,000 in statutory damages and $120,000 in exemplary damages. Although the jury found that Defendant did not infringe Plaintiffs' trademark, the jury did find Plaintiffs' trademark to be valid.

This Court finds that Plaintiffs are the prevailing party. While both parties each "won" two claims, Plaintiffs changed their relationship with Defendant by being awarded $150,000. *See Leonard*, 408 F.3d at 532 n.3 (holding that plaintiff winning one of her claims and being awarded $20,000 in damages sufficed to make her a prevailing party).

### Plaintiffs' Motion for Attorney Fees, Costs and Interest [doc. #199]

Plaintiffs seek reimbursement pursuant to 17 U.S.C. § 505 and 35 U.S.C. § 285 for reasonable attorney fees incurred throughout this litigation. The fees awarded under the statutes are "for 'reasonable' fees based on a lodestar figure represented by the reasonable hourly rate multiplied by the hours expended in the litigation." *Pinkham*, 84 F.3d at 294.[9]

#### *Fees Under the Copyright Act*

The Copyright Act provides that attorney fees may be awarded to the prevailing party. Specifically, 17 U.S.C. § 505 provides that

---

[9]In *Junker v. Eddings*, the Federal Circuit noted that "'[t]he purpose of § 285 is. . .to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit[,]' and that 'attorney fees. . .include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit.'" 396 F.3d 1359, 1365 (Fed. Cir. 2005). Reasonable fees are determined by multiplying the number of hours expended on the litigation by a reasonable hourly fee. The number of hours expended must be reasonable in light of the "tasks [which had to be] performed in connection with the litigation" and supported by documentation evidencing "hourly time records [and] full expense statements." *Id*. The hourly fees requested must be supported by "documentation of attorney hourly billing rates in the community for the particular type of work involved [and] the attorney's particular skills and experience."

[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

The Eighth Circuit has not adopted a definitive standard for when to award attorney's fees under the Copyright Act. *See Applied Innovations, Inc. v. Regents of the University of Minnesota*, 876 F.2d 626, 638 (8th Cir. 1989) (noting that there is no standard); *United Telephone Co. v. Johnson Publishing Co.,* 855 F.2d 604, 612 (8th Cir.1988) (reference to abuse of discretion standard in general). So, while "[t]here is no precise rule or formula for making these determinations," the court must consider certain factors when determining whether to award fees. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534-35 (1994). These factors include (1) whether the litigation involved complex or novel questions; (2) whether the parties litigated in good faith; (3) frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case); and (4) the need in particular circumstances to advance considerations of compensation and deterrence. *See Applied Innovations, Inc.*, 876 F.2d at 638; *Mary Ellen Enterprises v. Camex, Inc.*, 68 F.3d 1065, 1072 (8th Cir. 1995); *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996); *Fogerty*, 510 U.S. at 534 n.19. Other circuits have also considered "(1) the defendant's status as innocent, rather than [as a] willful or knowing, infringer (2) the plaintiff's prosecution of the case in bad faith, and (3) the defendant's good faith attempt to avoid infringement. *See Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1583 (Fed. Cir. 1992) (quoting *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 323 (9th Cir.1987)). Furthermore, the Court notes that "[b]ad faith or wilfulness is not a prerequisite to an award of attorneys' fees." *Mary Ellen Enterprises*, 68 F.3d at 1072.

Based on these factors, the Court holds that Plaintiff is entitled to attorney's fees and costs[10] under 17 U.S.C. § 505. This case did not include novel questions of fact or law. The cubes were virtually identical. Infringement was clear; indeed, the jury found the infringement to be willful. Also, as Defendant noted, this case involved "an extremely simple novelty item." The Court finds that the Plaintiffs did not prosecute the case in bad faith, and there was a lack of good faith by Defendant in attempting to avoid infringement. The Court also finds that there is a need to deter future copyright infringement when the infringement is as clear as the infringement was in this case and actual damages are negligible.

### Fees Under the Patent Act

Courts are also permitted to award attorney fees in certain "exceptional" cases. According to 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The court must complete a two step process. First, the court must determine whether the prevailing party has proved by clear and convincing evidence that the case is "exceptional." *See Stephens v. Tech Intern., Inc.*, 393 F.3d 1269, 1273 (Fed. Cir. 2004); *Forest Laboratories, Inc. v. Abbott Laboratories*, 339 F.3d 1324, 1327 (Fed. Cir. 2003). "The criteria for declaring a case exceptional include willful infringement, bad faith, litigation misconduct and unprofessional behavior." *Imonex Services, Inc.*, 408 F.3d at 1378; *see also Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1339-40 (Fed. Cir. 2004) ("willfulness of the infringement by the accused infringer may be a sufficient basis in a particular case for finding the case 'exceptional'"); *nCube Corp.*, 436 F.3d at 1325 (same); *Union Carbide Chemicals & Plastics Technology Corp.*, 425 F.3d at 1372 ("A finding of willful infringement may qualify a

---

[10]The costs allowable under 17 U.S.C. § 505 are limited to the costs expressly identified in 28 U.S.C. § 1920. *Pinkham*, 84 F.3d at 295. Since the Court found *supra* that Plaintiffs are the prevailing party, Plaintiffs are also entitled to costs under 28 U.S.C. § 1920. For simplicity, since the same costs are recoverable under 28 U.S.C. § 1920 and 17 U.S.C. § 505, the Court will analyze all of Plaintiffs' requests fofr costs in the *infra* analysis of "Plaintiffs' Supplemental Motion for Bill of Costs" [doc. #201].

case as exceptional under 35 U.S.C. § 285 (1952), thereby allowing a party to obtain enhanced damages.").

Second, if the court finds the case to be "exceptional," the court "must then determine whether an award of attorney's fees is appropriate[.]" *Stephens*, 393 F.3d at 1273. The fact that actual damages are not awarded in a case does not make an award of attorney fees improper. *Knorr-Bremse*, 383 F.3d at 1347. "Attorney fees are compensatory, and may provide a fair remedy in appropriate cases. Upon a finding of willful infringement, the award of attorney fees is within the district court's sound discretion." *Id*. However,

> [a] jury finding of willful infringement merely *authorizes,* but does not *mandate,* an award of increased damages. Furthermore, a court is not required to award attorney fees, even when there is an express finding of willful infringement. An express finding of willful infringement is a sufficient basis for classifying a case as 'exceptional,' and indeed, when a trial court denies attorney fees in spite of a finding of willful infringement, the court must explain why the case is *not* 'exceptional' within the meaning of the statute.

*Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1308 (Fed. Cir. 2005) (internal citations and quotations omitted); *see also Rite-Hite Corp. v. Kelley Co., Inc.*, 819 F.2d 1120, 1126 (Fed. Cir. 1987) (the court's decision of whether to award fees is based on the "court's familiarity with the matter in litigation and the interest of justice").

The purpose of awarding attorney's fees under 35 U.S.C. § 285 is two-fold; it deters infringement by penalizing the infringer and prevents "gross injustice" when parties litigate in bad faith. *See Forest Laboratories, Inc.*, 339 F.3d at 1328; *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1552 (Fed. Cir. 1989). Indeed, "[w]hen infringement is found to be willful, the policy behind § 285 of discouraging infringement might justify imposing all of the patent owner's attorney fees on the infringer, even if the infringer prevailed as to some of the claims in suit." *Beckman Instruments, Inc.*, 892 F.2d at 1553 (noting that in other situations, the

extent of the parties' success should be taken into account in determining fees); *see also Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (attorney should be awarded full compensatory fee).

The Court finds this case to be "exceptional" based on the jury's verdict of willfulness.[11] Furthermore, the Court believes that awarding attorney's fees in this case comports with the purpose behind 35 U.S.C. § 285. Intellectual property enforcement litigation is extremely complicated, and thus, becomes expensive very quickly. Such litigation is virtually unaffordable for relatively small companies seeking to protect their intellectual property rights, especially because the litigation costs will often dwarf the actual damages. In this case in particular, the actual damages awarded by the jury was $150,000.00, which is not an insubstantial amount. However, the over $400,000 in attorney's fees far exceeds the actual damages. Defendant in this case willfully infringed Plaintiffs' patent and copyright. Without an award of attorney fees in cases of this type, willful infringers will know that enforcement of intellectual property rights will be cost prohibitive due to the high cost of litigation. An award of attorney's fees is proper in cases such as this case, so that willful infringers will be punished and deterred.

### Plaintiffs' Supplemental Motion for Bill of Costs [doc. #201]

"[C]osts other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d). "However, such costs must be set out in 28 U.S.C. § 1920 or some other statutory authorization." *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006). Pursuant to 28 U.S.C. § 1920, costs may be taxed for:

> (1) Fees of the clerk or marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;

---

[11]All of Defendant's arguments against awarding fees relate to the jury's finding of willfulness. The Court thoroughly discussed the evidence supporting willfulness *supra*, when discussing the merit of Defendant's motions for JMOL.

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2000). The Court may not award costs not authorized by § 1920 because § 1920 "imposes 'rigid controls on cost-shifting in federal courts.'" *Brisco-Wade v. Carnahan*, 297 F.3d 781, 782 (8th Cir. 2002) (citation omitted).

Plaintiffs seeks an award of $17,649.35 to be taxed against Defendant for various costs incurred in prosecuting this action prior to and during trial.

*Fees of the Clerk*

Plaintiffs seek an Order taxing Defendant $150 for fees of the Clerk. Plaintiffs have provided documentation that such fees were incurred in filing this action. This Court will tax Plaintiff $150 for fees of the Clerk.

*Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case*

Plaintiffs seek an Order taxing Defendant $6,831.11 for fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case. Plaintiffs incurred fees of $170.60 for the deposition of Lawrence Kamm taken on March 28, 2005; $850.05 for the depositions of Carl VanderSchuit and Ed Galicki taken on March 28, 2005; $341.65 for the deposition of David Warren VanderSchuit taken on April 6, 2005; $1,708.50 for the deposition of Bob Bryant taken on April 26, 2005; $270.60 for the deposition of Derek Pettigrew taken on April 26, 2005; $832.75 for the deposition of Leonard Kensit and Huston Hill taken on April 26, 2005; $656.20 for the deposition of Ann Mescher taken on April 29, 2005; $25.00 for the deposition of Ed Galicki taken on May 16, 2005; $576.71 for the video deposition of Anke Kolb

taken on July 11, 2005; $486.95 for the deposition of Scott Hampton taken on July 14, 2005; $620.70 for the deposition of Anke Kolb taken on July 19, 2005; and $291.40 for the deposition of Bob Bryant taken on July 28, 2005.

A district court has the discretion to tax costs incurred incident to the taking of depositions when the depositions are "necessarily obtained for use in the case." *Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 363 (8th Cir. 1997). Furthermore,

> the determination of necessity must be made in light of the facts known at the time of the deposition, without regard to intervening developments that later render the deposition unneeded for further use. In other words, the underlying inquiry is whether the depositions reasonably seemed necessary at the time they were taken.

*Id.* (internal citations and quotations omitted). "Unless the opposing party interposes a specific objection that a deposition was improperly taken or unduly prolonged, deposition costs will be taxed as having been 'necessarily obtained for the use in the case' within the meaning of 28 U.S.C. § 1920." *Meder v. Everest & Jennings, Inc.*, 553 F. Supp. 149, 150 (E.D. Mo.1982). "A district court may tax transcription costs if a deposition was 'necessarily obtained for use in a case' and was not 'purely investigative.'" *Marmo v. Tyson Fresh Meats, Inc.*, __ F.3d __, 2006 WL 2165734, at *10 (8th Cir. August 3, 2006).

Defendant argues that many of the depositions were unnecessary because they were purely discovery in nature and others were not used at trial. Defendant noticed up Mr. Kamm, Mr. Carl VanderSchuit, Mr. Galicki, and David VanderSchuit for deposition. The costs requested by Plaintiffs are limited to the cost of a copy of the transcript of the depositions. Defendant cannot call the depositions and then claim that the depositions were not necessary. Furthermore, the standard is not whether a deposition is introduced or referred to during trial. Costs of a deposition are taxable if it was necessarily obtained for use in the case. The other three deponents, Mr. Bryant, Dr. Mescher, and Mr. Hampton were all called during trial, and the

depositions were necessary for impeachment purposes. The Court finds that all of the depositions were reasonably necessary.

Of the $6,831.11 requested for transcripts, $141.86 is for shipping and handling costs. A recent Eighth Circuit case holds that "Section 1920 does not authorize taxing [the non-prevailing party] for the [prevailing party's] postage and delivery expenses." *Smith*, 436 F.3d at 889; see also *Hollenbeck v. Falstaff Brewing Corp.*, 605 F.Supp. 421, 439 (E.D. Mo. 1984) (postage fees ordinarily not taxable as costs). The $141.86 for shipping and handling will be deducted from the $6,831.11 requested. Therefore, this Court will tax Plaintiff a total of $6,689.25 for fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case.

### Fees for witnesses

Plaintiffs seek an Order taxing Defendant $4,890.00 for witness fees of Anke Kolb, Scott Hampton, and Kevin Trankler. Title 28, United States Code, Section 1821 mandates the circumstances when witness expenses are taxable as costs and to be awarded to the prevailing party. "A witness shall be paid an attendance fee of $40 for each day's attendance." 28 U.S.C. § 1821(b). The statute also provides for, *inter alia*, transportation by common carrier (§ 1821(c)(1)), cab fares and parking fees (§ 1821(c)(3)), and all normal travel expenses (§ 1821(c)(4)). "[T]he taxing of fees and mileage for witnesses in federal courts is within the sound discretion of the trial court." *Spiritwood Grain Co. v. Northern Pac. Ry. Co.*,179 F.2d 338, 344 (8th Cir. 1950). "This Court has awarded expert witness fees, however, under Fed.R.Civ.P. 54(d) if, after carefully scrutinizing the prevailing party's bill of costs, the district court determines that the expert's testimony was crucial to the issues decided and the expenditures were necessary to the litigation." *Nebraska Public Power Dist. v. Austin Power, Inc.*, 773 F.2d 960, 975 (8th Cir. 1985).

In this case, the Court uses its discretion and deems the witness was reasonably necessary in this case. *See Linneman Constr., Inc. v. Montana-Dakota Utilities Co.*, 504 F.2d 1365, 1372 (8th Cir. 1974) (holding that the Eighth Circuit allows expenses for only such number of witnesses and for the number of days as the court deems reasonable). First, Plaintiffs seek $40 for the attendance of Anke Kolb at deposition and $10.00 for travel costs. The Court finds the witness was reasonably necessary. Next, Plaintiffs request $900 for "Deposition charges by Campos & Stratis, Inc. for Scott Hampton Deposition." It is unclear what the $900 fee is, from the documentation submitted to the Court. Thus, because the Court may not award costs not authorized by § 1920, the cost will not be taxed to Defendant. *See Marmo*, 2006 WL 2165734, at *11 (district court refused to award costs that were described insufficiently). Finally, Plaintiffs seek $3,940.00 for costs associated with the expert witness fees of Dr. Trankler. The Court finds that his testimony was "crucial" to the issue of whether Defendant's cubes were "adapted to retain heat/cold." Thus, his expert fees will be taxed to Defendant. Therefore, this Court will tax Defendant $3,990.00 for witness fees.

*Fees for exemplification and copies of papers necessarily obtained for use in the case*

Plaintiffs seeks an Order taxing Defendant $5,778.24 for fees for exemplification and copies of papers necessarily obtained for use in the case. "To recover for costs associated with photocopying, it is incumbent on the Defendant to show *at least* what the documents were and what use was made of these documents." *Glastetter v. Sandoz*, 2000 WL 34017154, at *1 (E.D. Mo. October 3, 2000) (emphasis added). Here, Plaintiffs list the number of copies, the cost of the copies and what the copies were. The copies were documents requested during discovery, copies of documents produced by Defendant for use at depositions and in briefing, service copies, and copies of Plaintiffs' trial exhibits for use at trial. In Plaintiffs' briefing, Plaintiffs further represent that they made every attempt to keep copying costs at a minimum by not having a working set of discovery documents for their convenience. The Court finds the amount requested by Plaintiffs is

reasonable.  Therefore, this Court will tax Defendant $5,778.24 for fees for exemplification and copies of papers necessarily obtained for use in the case.

### Interest on Money Judgment

#### *Statutory Post-Judgment Interest*

Pursuant to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  Plaintiffs are entitled to interest on the $150,000.00 Clerk's Judgment entered on October 7, 2005.  The amount of "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.  28 U.S.C. § 1961(a).  The statutory post-judgment rate for the calendar week preceding the judgment was 3.97%.  "Interest shall be computed daily to the date of payment. . .and shall be compounded annually.  28 U.S.C. § 1961(b).

#### *Pre-Judgment Interest*

This Court holds that Plaintiffs are also entitled to pre-judgment interest on the $150,000 statutory copyright infringement damages at a rate of 1.41%.[12]  *See Paramount Pictures Corp. v. Metro Program Network, Inc.*, 1991 WL 348168, at *12 (N.D. Iowa Apr. 8, 1991), *aff'd* 962 F.2d 775 (8th Cir. 1992) (noting that there is no Eighth Circuit authority, but electing to follow other well-reasoned opinions from other courts); *see also Saturn Mfg., Inc. v. Williams Patent Crusher & Pulverizer Co.*, 713 F.2d 1347 (8th Cir. 1983) (relating to pre-judgment interest for patent infringement).  The amount of interest shall be calculated from the date of the filing of this lawsuit, April 23, 2004, through October 7, 2005, the date of the entry of the judgment.

---

[12] 1.41% is the interest rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date the lawsuit was filed.

**Defendant's Motion for Bill of Costs [doc. #216]**

As the Court set forth earlier, "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d). As the Court held *supra*, Plaintiffs are the prevailing party in this action. Defendant is not entitled to costs under Rule 54(d) of the Federal Rules of Civil Procedure.

**Defendant's Cross-Motion for Attorneys' Fees and Costs [doc. #218]**

Defendant argues that it is entitled to fees and costs as a prevailing party under the Lanham Act, 15 U.S.C. § 1051, et seq. and under Rule 68 of the Federal Rules of Civil Procedure. The Court will address each argument.

*Rule 68 Offers*

Defendant claims that it is entitled to all costs it incurred after it made an Offer of Judgment prior to trial. According to Rule 68 of the Federal Rules of Civil Procedure,

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability.

The Court has reviewed the exhibits submitted to the Court by Defendant in support of its request for costs under Rule 68. Defendant purports that there were three Offers of Judgment made pursuant to Rule 68. The Court will address each seriatim.

Chronologically, the first purported offer was made in an email dated August 10, 2005. In the email, sent by Bob Bryant to Carl VanderSchuit, Mr. Bryant suggested that the three "principals" from Litecubes, L.L.C., Northern Light Products, and Chemical Light[13] meet in Chicago to discuss settlement. Mr. Bryan makes what he calls a "proposal," suggesting that the terms "can be accomplished in a relatively short time with no out of pocket expense to Litecube or Chemical Light." Defendant points to a particular "term" in support of its claim that it gave Plaintiffs an offer more favorable than the ultimate judgment. In its Reply Brief in Support of GlowProducts' Cross-Motion for Attorneys' Fees and Costs, Defendant argues that "[t]he referenced e-mail where GlowProducts offered $400,000 for settlement came months before trial[.]" After scouring the emails provided to the Court, the Court found a "term" providing that "Chemical Light pays the difference between 'actual product cost' and an agreed purchase price to NLP [Northern Light Products] totaling US $400,000 paid in equal monthly installments over the same predetermined time. The Court finds that the $400,000 "offer" is not an offer at all. The provision referenced by Defendant is not an offer of $400,000 to Plaintiffs; it is an "offer" that Chemical Light pay Defendant $400,000.

The second purported offer was a document titled "Defendant's Offer of Judgment," dated September 20, 2005. The Court finds that this offer satisfies the requirements of Rule 68. The offer is timely and written. The offer states, "[f]or infringement based on the sale of products referred to in this litigation as the 'EXA cubes,' of which only 9,520 are agreed between the parties to have been sold, GlowProducts agrees to the amount of $5,000 in total damages

---

[13]The Court is not familiar with "Chemical Light" since it has not played a role in this lawsuit. The Court guesses that Chemical Light is another seller of lighted ice cubes.

exclusive of fees and costs."  In this case, Plaintiffs were awarded by the jury no damages for patent and trademark infringement, but were awarded $150,000 for copyright infringement.  The Rule 68 Offer of $5,000 for "infringement" is clearly not as favorable as the $150,000 that jury awarded to Plaintiffs.[14]

The final purported offer was made by Defendant on September 23, 2006.  The Court finds that the offer was not timely under Rule 68.  Trial started in this case on October 3, 2005.  Ten days prior to trial, taking into account Rule 6 of the Federal Rules of Civil Procedure,[15] was September 20, 2005.  Thus, any offers made after that date are ineffectual.  Since Defendant's offer was not made until September 23, 2005, it is not a valid offer under Rule 68.  Therefore, Defendant is not entitled to costs for any purported offer made pursuant to Rule 68.

### Exceptional Case under Lanham Act, 15 U.S.C. § 1117(a)

Defendant argues it should be awarded fees and costs for its "victory" on the trademark and unfair competition claims, pursuant to 15 U.S.C. § 1117(a).  Section 1117(a) provides, in relevant part, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  Under the Lanham Act, "[a]n exceptional case is one where the plaintiff's claim "'is groundless, unreasonable, vexatious, or pursued in bad faith.'"  *Blue Dane Simmental Corp. v. American Simmental Ass'n*, 178 F.3d 1035, 1043 (8th Cir. 1999); *see also Scott Fetzer Co. v. Williamson*, 101 F.3d 549, 555 (8th Cir. 1996).  Defendant argues that Plaintiffs' claims of trademark infringement and unfair competition were groundless.

---

[14]Defendant argues that the Rule 68 Offer was for patent infringement only, and thus, the $5,000 was more favorable than the jury's award of $0.  However, the Court finds that the plain language of the offer includes all infringement, and is not limited to patent infringement.

[15]Rule 6 provides, *inter alia*, that "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation" and "[w]henever a party must or may act within a prescribed period after service and service. . .3 days are added after the prescribed period would otherwise expire under subdivision (a)."

Under the Lanham Act, "any person who. . .uses in commerce any word, term, [or] name. . . which. . .is likely to cause confusion. . .shall be liable in a civil action[.]" 15 U.S.C. § 1125(a)(1); *see also Davis v. Walt Disney Co.*, 430 F.3d 901, 903 (8th Cir. 2005). In *SquirtCo v. Seven-Up Co.,* 628 F.2d 1086, 1091 (8th Cir.1980), the Eighth Circuit set forth the factors that a court should consider when assessing likelihood of confusion.

> These can be enumerated as: 1) the strength of the plaintiff's mark; 2) the similarity between the plaintiff's and defendant's marks; 3) the degree to which the allegedly infringing product competes with the plaintiff's goods; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential customers, and 6) evidence of actual confusion.

*Davis*, 430 F.3d at 903 (citing *SquirtCo*, 628 F.2d at 1086). In order "to protect persons engaged in commerce against. . .unfair competition," the Lanham Act also prohibits "[a]ny person who,. . .in connection with any. . .services,. . .uses in commerce any. . .false or misleading representation of fact, which. . .in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities. . .[of] another person's. . .services." *Allsup, Inc. v. Advantage 2000 Consultants Inc.*, 428 F.3d 1135, 1138 (8th Cir. 2005) (quoting 15 U.S.C. § 1125(a)(1)(B)). "Full and fair competition requires that those who invest time, money and energy in the development of good will and a favorable reputation be allowed to reap the advantages of their investment. *Armstrong Cork Co. v. Armstrong Plastic Covers Co.*, 434 F.Supp. 860, 871 (E.D. Mo. 1977).

The Court finds that Plaintiffs' unfair competition and trademark infringement claims were not "groundless, unreasonable, vexatious, or pursued in bad faith." Defendant argues that Plaintiffs' claims were "groundless." A case will not necessarily be considered exceptional simply because a plaintiff does not prevail. *See Blue Dane Simmental Corp.*, 178 F.3d at 1043 (holding the trademark infringement case was not exceptional following a grant of JMOL); *Scott Fetzer Co.*, 101 F.3d at 555 (finding that case was not exceptional, regardless of the grant of JMOL,

because there was some evidence in the record to support plaintiff's claims); *Beckman Instruments, Inc.*, 892 F.2d at 1551-52 ("With respect to the other defense and counterclaim which were dropped, the mere fact that an issue was pleaded and then dropped prior to trial does not in itself establish vexatious litigation.").

In this case, prior to the Court instructing the jury, Plaintiffs voluntarily withdrew their claim of unfair competition. The Court instructed the jury on the issue of trademark infringement. While the jury found no infringement, it did find the trademark to be valid.

The Court holds that Plaintiffs' claims were not baseless. Plaintiffs set forth evidence relating to the likeliness of confusion between Plaintiffs' and Defendant's products. The strength of the mark was underscored by the jury's finding that Plaintiffs' trademark was valid. Also, Plaintiffs presented evidence that Defendant purchased the term "Litecubes" as a search term on Yahoo!, Google, and MSN, evidencing the "similarity" between the marks. There was a significant amount of evidence presented demonstrating that Plaintiffs' and Defendant's products were in direct competition. Finally, Plaintiff Carl VanderSchuit testified about actual confusion of customers trying to distinguish between Plantiffs and Defendant's products. Thus, the Court holds that this case is not exceptional under the Lanham Act, and the Defendant is not entitled to fees and costs.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [doc. #195] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Judgment as a Matter of Law Regarding Copyright Infringement, or Alternatively, for Remittitur [doc. #197] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Attorney Fees, Costs and Interest [doc. #199] is **GRANTED**. The Court will award all reasonable attorney's fees plus

lawful interest.  The Court makes no finding as to a reasonable amount of fees at this time.

Plaintiff shall provide complete billing records and supporting documentation[16] to the Court no

later than September 18, 2006 in order for the Court to make a determination as to the reasonable

attorney's fees incurred in this case.  Defendant shall file any objections to the reasonableness of

such fees requested within 10 days thereafter.

**IT IS FURTHER ORDERED** that Plaintiffs' Supplemental Motion for Bill of Costs

[doc. #201] is **GRANTED in Part, and DENIED in Part**.  It is Ordered that the Clerk of this

Court shall tax costs against Defendant Northern Light Products in favor of Plaintiffs Litecubes,

L.L.C. and Carl VanderSchuit in the amount of **$16,607.49** constituting: $150 for Fees of the

Clerk; $6,689.25 for Fees of the court reporter for all or any part of the transcript necessarily

obtained or use in the case; $3,990.00 for Witness fees; and $5,778.24 for Fees for

exemplification and copies of papers necessarily obtained for use in the case.

**IT IS FURTHER ORDERED** that Defendant's Motion to Stay Briefing for all Motions

for Attorneys' Fees, Costs and Interest [doc. #202] is **DENIED as Moot**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Permanent Injunction [doc.

#205] is **GRANTED**.  GlowProducts and each of its agents, affiliates, successors, servants, and

employees, and any and all other persons or entities acting under GlowProducts' authority, are

hereby enjoined from (1) at any time on or before July 28, 2020, making, using, offering for sale

or selling in the United States or importing into the United States products which  infringe U.S.

Patent No. 6,416,198 ("the '198 patent") or (2) infringing U.S. Copyright Registration No. VA

1-117-699 ("the '699 copyright") by reproduction, preparing a derivative work, distribution,

display, or claim authorship of any work that is substantially similar to the work depicted in the

'699 copyright.

_____

[16]*See supra* footnote 9 for a description of the necessary documentation.

**IT IS FURTHER ORDERED** that Defendant's Motion for Judgment as a Matter of Law Regarding Patent Infringement, or Alternatively, for a New Trial [doc. #213] is **DENIED**

**IT IS FURTHER ORDERED** that Defendant's Motion for Bill of Costs [doc. #216] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Attorneys' Fees and Costs [doc. #218] is **DENIED**.

Dated this <u>25th</u> day of August, 2006.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE